This court has previously held that Mr. Bliss's, the responses that Mr. Bliss's appointed counsel made at the original plea hearing were not sufficient and it remanded the case for an evidentiary hearing. Well, at that evidentiary hearing, we learned that counsel was not prepared for trial. He flatly admitted he wasn't prepared for trial. We learned that he hadn't obtained a transcript of the earlier suppression hearings. Why did he even need that? I mean, he's got the basic facts. Even without that transcript, it suggests to him he better make a suppression motion. He never made a suppression motion. He never moved to continue. He wasn't prepared. The earlier decision of this court said that counsel had a responsibility to prepare and seek a continuance if time was too short. Well, we learned from the evidentiary hearing that counsel didn't prepare. We learned at the evidentiary hearing that time was too short because Judge Reel said this case is going to trial. What the district court said was, unless you have someone here who will be ready for trial, when this matter is set, Edwards will be your lawyer. Judge Reel said the case was set. It's going to go on that date. It's come hell or high water. This case is going out on the date that it's been set. There's no exceptions to that rule. This court has previously said that when a defendant is seeking a continuance and when the defendant is trying to substitute counsel, the district court has an obligation to summarize its reasons in the record for not granting that continuance if someone's trying to substitute counsel. Well, the government's position in large measure is that he wasn't prepared because your client didn't let him get prepared. And that's, you know, you can't – Carpenter's only as good as the tools he has. But as Judge Fletcher indicated, Your Honor, that any counsel should have looked at the facts, should have realized that a motion to suppress was something that a reasonably competent lawyer would have analyzed to determine whether he should come up with a motion to suppress or not. Even without his client speaking to him, he should come up with that conclusion? Absolutely, Your Honor. Because in this case, when there's a warrantless stop, there's a search without a search warrant, there are all these legal reasons as to why a lawyer would analyze the reasons for that stop. The police just can't come up to you and stop you, go into your trunk, handcuff you, and seize things out of your car. There has to be some reason for that to happen. Well, if you make a motion like that, what do you say in the motion when your client won't tell you what he was doing in the car, whether he was a passenger, whether the contraband was his or another occupant of the car, or he didn't know it was the car? How do you handle something like that? I mean, I have some concern that a defense attorney with a client that's not talking to him is being whipsawed here. There are two answers for that, and I want to answer both. One, I don't think that this attorney was being whipsawed in the least. I think this attorney was deceitful in the court. I think he was deceitful at the habeas hearing, and I don't think anything that he says can be trusted. But if we have the situation that you're proposing, I think the attorney has an independent obligation to examine the facts. I think the attorney should look at the discovery. If there are witnesses that are labeled in the discovery, there's an obligation to go out and investigate and talk to those witnesses. In this case, it was very clear that any competent counsel would know the way that this case got into state court, there would be a transcript of what happened in state court. Does he have an obligation to look at the proceedings in state court when it was originally in state court before it was filed in federal court? Under the circumstances of this case, absolutely. A Sixth Amendment right, obligation? Yes, absolutely. I think an attorney has a Sixth Amendment. Under the Sixth Amendment, an attorney has an obligation to conduct a reasonable investigation of the facts of the case. In this case, a reasonable explanation of the facts would include talking to the witnesses. If you can't talk to your client, you have to talk to the witnesses. We have testimony on the remand hearing from both Arthur Ely and Suzy Cannon that both of them contacted the attorneys. Ely, having left a message, Cannon saying that she talked to him on several occasions. Now, Judge Reel chooses not to believe that, but it's uncontradicted. It's absolutely true that it's uncontradicted, and that's the point I wanted to make, because in the government's brief, the government at some time says the evidence is there were no calls. That's not correct. Both of the witnesses testified that they did in fact call, and Edwards testified at the remand hearing that he didn't recall whether they called or not. In addition, when it comes to the credibility of Edwards, when you look at his testimony at the remand hearing, when you look at his file, when you look at his cron notes, it's very clear that he did next to nothing in this case. And I think the best example of that is really the chronology as to what happened before the sentencing hearing. The sentencing hearing was scheduled for Monday, August 19th. He obtained the pre-sentence report possibly on August 13th. On August 15th, which is a Thursday, he wrote a letter to his client saying, here's the PSI. If you have any problems, I'll talk to you about it next week. Well, next week was going to be Monday when the hearing was. There was just nothing done to prepare for trial or for sentencing. And given the courtroom dynamics, given what it's like to be someone who's trying to make your points on your own, talking to the court, trying to say, look, my lawyer hasn't done anything. My lawyer is unprepared. I think Bliss actually did an admirable job of making his points. This isn't a case where he was whipsawing someone. He was saying, hold on here. This is going too fast. I need a lawyer. I need a lawyer who's going to look at things. And Edwards directly undermined what Bliss was saying and Edwards undermined what Bliss was saying in manners that were not true. Well, assuming everything you say is true, the lawyer is unprepared and he's forced on, where do we go from the fact that the man pled guilty? He said, I'm guilty of these offenses and I'm waiving a trial jury and will arrest. I think Bliss has more than got over the high bar that there is based upon the statements of the plea. Those statements that he made at the time he pled guilty were unfortunate. And I think more than anything else, they show his lack of sophistication. Well, they're more than that. They're more than unfortunate and sophisticated. They're perjurious, actually. He said these are the rules, correct? Yes, he did. Well, if they're not true, then he's. And that's why you're supposed to have assistance of counsel to get you through the process. He was faced with an unconstitutional choice. He was faced with the choice of going to trial with an admittedly unprepared lawyer or pleading guilty. And he stupidly, naively, uncounseledly thought that by pleading guilty, maybe he'd get some benefit, maybe he'd get some responsibility. Do you really think he was stupid and naive? I do, Your Honor, because if he was trying to manipulate the system, what he should have done is said exactly what he said and then just sat through a trial. Because if he said exactly what he said and sat through the trial, the government wouldn't have any arguments to make because the government's argument. Then he would have gotten life, wouldn't he? Yes, but it would have been reversed, and he effectively got life anyways. He got 420 months. He's not going to get out of prison alive. So when you look at how much time that he got in custody, he didn't get anything by pleading guilty. And that's another thing that shows how ineffective the assistance was because the record looks as if there was some sort of offer out there for 28 years, which is a lot less than 420 months. But he got more because he didn't accept responsibility, because he tried to explain to Judge Rial what the problems were, because he kept telling the court, my counsel hasn't prepared, he hasn't looked at the motions, he hasn't done anything. So I don't think he was being sophisticated. I don't think he was manipulating the system. I think he was trying to be as respectful as he possibly could. If you look at the transcripts of the three court hearings, if you look at the letter that he wrote to Judge Rial, if you look at the letter that he wrote to this court, this is a man who consistently identifies specific problems. He says he hasn't prepared, he hasn't considered the motions, he hasn't looked at the fingerprint. Assume all of this is true for the purpose of argument, that he was unprepared, the lawyer was deficient under the Sixth Amendment. So you have a defendant that pleads guilty, saying I am guilty under oath. He's acknowledged that he's guilty of these crimes. So in effect, what it resolves down to is that you're saying the plea was not intentionally or was not intentionally made or was not made with. I agree. It would not be a knowing and intelligent waiver of his right by counsel. Well, there's no waiver of right by counsel because he had counsel here. Even though the counsel was deficient, he could be deficient as could be. As long as he pled guilty, he acknowledges the truth of the charges. So what you're saying, so how can you say that this is not a knowing and intentional plea when he acknowledged that he was guilty of these crimes? Because a plea is a waiver of rights. A plea is a waiver of your right to trial. It's a waiver of your right to stand and plead not guilty. So to waive the rights that are part of the plea concept, you must have a knowing and intelligent waiver of those rights. And in this country, under our system, to knowingly and intelligently waive your rights to trial, your trial rights to confront and cross-examine witnesses, your rights against self-incrimination, you have to be counseled to do that. And in this case, there was not a knowing and intelligent waiver because the advice from his counsel was deficient. He didn't have competent counsel to draw him through that process. If he had, we would have a different case if he said, well, this guy's terrible, I want to go improper. That would be a different analysis because then he would have waived his right to counsel. If we accept your argument and we remand it for trial, could your client be indicted for perjury or false swearing? That would be an interesting question, and that's not something that I'm prepared to address at this point, but obviously that's a danger when you get in a situation like this. Well, it's a danger for us to say he's entitled to a new trial when he said, without the advice, counsel did not advise him to plead guilty. He decided that himself. And it's sort of the horns of a dilemma here. Even admitting for the purpose of argument without conceding that he had ineffective assistance under the Sixth Amendment, once he pled guilty, everything I read is that what went before is wiped out. But the problem is that a plea is supposed to be a real choice. It's supposed to be a choice between options. It's supposed to be a choice between real constitutional issues. Here he had nothing. Here his choice was you can go to trial with an unprepared lawyer, which he really saw. He saw how horrible that was going to be. So he said, no, I'm going away from it. How did he see how horrible that was going to be? Because he saw that the lawyer wasn't prepared. He saw the lawyer hadn't talked to the witnesses. He saw that he had a real substantial motion to continue the trial, that if the lawyer would have told him. Well, first of all, he was in Judge Reel's court. That's correct. Okay. So you forget about getting a continuance. That's correct. Okay. I'm not saying it's correct or not. But in the colloquy, did the judge ask him if he was satisfied with counsel, satisfied with the representation? In the colloquy, he said, I have no complaints against him personally, but he just hasn't done anything about this case. He hasn't talked to the witness. He's just said, I don't have any time. That's in the plea colloquy. That's in the plea colloquy, yes. And that's why when you talk about whether he can be prosecuted for perjury, whether we should look at his statements, I think you have to look at the entire plea colloquy in context. And so far you've been talking about knowing an intelligent plea, but there also in this case law, it also has to be voluntary. I agree. So voluntary may be a linchpin here in the sense of if he's put in this position by the lawyer's deficient performance, it may not be voluntary within the meaning of the case law. I completely agree, and I've argued that in my briefs. Yes. Well, the judge asked him whether he's being pressured or forced or anyone as part of the plea colloquy. He did, and he said no. He said that he hasn't been pressured or forced, but he also said that he has a lawyer, that his lawyer had called the courtroom. His lawyer had said he's been retained. If he can get a short continuance, he can come in and try the case, that the lawyer who's there present hasn't done anything, and that lawyer wasn't. But, you know, the judges hear those arguments all the time. I mean, that's not an uncommon argument. I think judges do hear those arguments all the time, but I do think 35 days for someone who's effectively looking at a life case, when the case had been going on in state court for nine months, when there had been a three-day evidentiary hearing in state court, when there was a real motion to suppress, when there was an issue for the fingerprints, when there were forensic issues, when there were preparation for trial issues, I think that some preparation has to be done, and that wasn't done here. And I do think that if the lawyer had come up to Judge Real and helped Bliss make the record, which he had an obligation to do, saying that we're not prepared, which he admits, that there was a motion to suppress, I don't have the transcripts, which are true, that we can't go to trial because I'm not prepared, so please continue the case so that, one, my client isn't forced into an unconstitutional choice so he can make a voluntary decision, we wouldn't be standing here today. Thank you, and I'd like to reserve two minutes for rebuttal. Good morning, Your Honors. May it please the Court. Becky Walker, appearing on behalf of the United States. The primary issue here is whether defendant's guilty plea was involuntary. If it was voluntary, any pre-plea claims are waived. So the only issue to be decided in terms of defendant's conviction is the validity of the plea, namely the voluntariness of that plea. The facts here show that the defendant's guilty plea was, in fact, voluntary. What happened here was the defendant wanted to retain counsel, and he, therefore, would not cooperate with his appointed counsel. The judge would not grant a continuance that would have allowed retained counsel to come in, and so when the defendant found himself on the day of trial without this retained counsel he was hoping to have, he made a strategic choice to plead guilty rather than to go to trial with the appointed counsel with whom he had chosen not to cooperate. The case law is clear that in those circumstances, those circumstances do not render a guilty plea involuntary. Recently this Court in United States v. Foreman held that the denial of substitution of counsel does not by itself render a guilty plea involuntary. The Court rejected the argument that the defendant was forced to plead guilty because he was forced to go to trial with counsel with whom he has no confidence under those circumstances. Well, how about in this situation, the litany of events showing that defense counsel was totally unprepared to go to trial, didn't do any investigation, never read the State court record, all the other aspects that were brought up by appellant's counsel. Isn't there a question as to whether or not that this plea was coerced or voluntary under, that the man was in such a pressure of, and forced on to trial that he had no choice realistically? Well, he did have a choice, Your Honor. He had choices all along the way. And the reason that counsel was unprepared. He had a Hobson choice. He wouldn't have gone to trial with an unprepared lawyer and had a life sentence. Well, but that was a choice that flowed from other choices the defendant had made, namely his choice not to cooperate with counsel. The reason that counsel was unprepared for trial. Wait a minute. How about. This case is on a fast track from the beginning. He's in the process of trying to line up another lawyer. And at the time we're in front of Judge Reel, and Judge Reel says you're going to trial, he's really about there. Mr. Edward knows that this has been going on. At least he's been told by his client that this is going on. Doesn't Edwards have at least a responsibility as soon as he knows that they're trying to line up counsel to alert the court to this? To say, listen, I'd like a continuance because my client is making good faith efforts to do this. It's not as though we've got, you know, a six-month period. This is what, 45 days? I mean, this is a pretty fast train. It was moving quickly, although it was within the speedy trial time. Edwards had some knowledge that the defendant was trying to line up counsel. It does not appear. Well, I mean, that's his entire defense is that he was trying to line up counsel. Right. And he had some indication. The record reflects that Edwards had some indication that he was trying to contact a Mr. Blatt and that he might be substituting in. But he had never received any further word from Mr. Blatt that he was, in fact, substituting in. He did know from his client that, you know, his client was telling him he was, you know, trying to retain a private lawyer. He wouldn't talk to him. But his client also did indicate an interest in pleading guilty, which is why everybody appeared on June 26. Now, when you say his client indicated an interest in pleading guilty, where's that in the record? It's it came up on the hearing on remand. And I believe there's an exhibit. Exhibit X, I believe, is a chronology. Which shows on, I think, June 20th that Edwards spoke with his client who has agreed to plead guilty. And he advised the AUSA of that. Yeah, that's Mr. Edwards' notes. And what's the date of the actual plea colloquy in front of Judge Real? The plea colloquy ends up being on July 2nd, which was the day of trial. The parties appeared on June 26th. And the purpose of that was intended to be a change of plea hearing. What ended up happening on June 26th was that Mr. Bliss indicated, you know, this interest in having another attorney come in. So Judge Real ended up putting it over for another day. You know, here's what troubles me most about this case. I read the transcript of the hearing on remand back to Judge Real. And Mr. Edwards, I didn't count, said, I don't recall how many times, 25 times, 30 times. He first says he doesn't even know what a cron file is. This is not a lawyer whose testimony comes across as here's what I did, here's my job. The cron file is almost nonexistent. I mean, you just gave me the last entry in that. I think there are about four entries in that cron file. This is a lawyer who was not doing his job. I mean, the evidence just jumps out at you that this lawyer was not doing his job. What do we do then when Mr. Bliss comes into court and says, truthfully, my lawyer has not been doing his job, I got another lawyer on the hook here. I mean, is this truly a voluntary plea agreement under these circumstances? Well, I wouldn't agree that the hearing on remand reflected that the lawyer wasn't doing his job. He did say he did not recall, but that is, I mean, this was about a year after the fact. He didn't recall things that are in the transcripts, that all he had to do was open it up. I mean, if he had prepared for the remand hearing, let alone prepared for the trial, if he had prepared for the remand hearing, he would have known the answer. I mean, this is the John H. Ehrlichman School of Trial Practice. I don't recall. Well, Your Honor, and the district court was confronted with that. The district court did evaluate Mr. Edwards. He had the opportunity to evaluate his demeanor. He did have Mr. Edwards, you know, I think if he did not specifically remember, he would not venture an answer. And so I think his approach was to say that he did not recall. I don't think that makes him incredible. He did recall certain very important details, which he did put in his declaration and he did testify to at the hearing. Let me just give you one example very early on in the hearing. Question. Now, did you prepare in the public defender's office, there's something in your file called a cron file, correct? A what? Chronological notes. I don't recall. He doesn't recall that he does a cron file? I mean, the cron file is a single piece of paper. It's in the record. He doesn't recall that. Well, Your Honor, there, I mean, a lot of time had passed. He had switched, you know, to another office. His memory was probably not the best. But I'm asking, there's a piece of paper he could have looked at to prepare for this. I mean, it's not a question of recall. It's a question, did you prepare for this hearing? Well. He doesn't even recall what a cron file is. What's going on here? Where was he at the time of this hearing? Where was he? On remand. I mean, where was he working? He was working at the alternate public defender's office on the State side. On the State side? Yes. Ms. Walker, let me take it from a different tack. What, in your opinion, did Mr. Edwards do in preparation for this case which would  I mean, what did he do? He showed that he was not ineffective in representing the defendant. What did he affirmatively do that showed that he was? He made repeated attempts to discuss the case with his client who would not discuss the facts of the case with him. What evidence do you have that he made repeated attempts? Is there anything in the cron file that tells you that? No, Your Honor. There's Mr. Edwards' testimony, which the district court did find credible. The other attempts that he made, the other efforts that he made once he realized that the client, you know, was not cooperating with him but he was going to be going to trial on July 2nd, he testified. He prepared an opening statement. He prepared jury instructions for a jury question. But he interviewed no witnesses or filed no motions or anything of that nature? He did not. And his explanation for not doing that was that, you know, he could not evaluate. In effect, he did discuss this with his client that he couldn't evaluate the validity of a motion to suppress without his client discussing the facts underlying it with him. Does he have a Sixth Amendment right duty to do those things even though the client is not cooperating? To do what things? To interview witnesses who he could easily have known from police reports and file motions and so forth even though the client is not cooperating or discussing the matter with him. Well, I think he has a Sixth Amendment right to prepare the case for trial. No, duty. Did he have a Sixth Amendment duty to do those things even though his client is not cooperating, knowing that the judge may force him on to trial? Well, I do think he has the duty to prepare the case to the best of his ability, which the Court found that he did. He didn't interview witnesses. His testimony is he did not interview witnesses because he was not aware of these witnesses. He did not recall these witnesses calling him, although the, you know, that was their testimony. He did not recall it. The district court found that he did not make those calls. He was not, he did not make the motion to suppress because he didn't have the facts from his client that would have permitted him to make the motion to suppress. So as the district court found, the court, Edwards did prepare the case to the best of his ability under the circumstances, and he would have done more had his client participated with him. I would like to return to the voluntariness of the guilty plea because ultimately that is the issue. And whatever complaints, you know, the client may have had about his client's performance, ultimately the question is was this guilty plea involuntary as a result? And here we have a record that shows that the district court repeatedly told the defendant on the 26th of June, the 27th, and on July 2nd that he could not be forced to plead guilty, that no one could force him to make that decision. He even, on the 26th, the court put it over a day to give him time to think about it. And the client, the defendant, did, in fact, represent to the court under penalty of perjury that his plea was voluntary, that he was pleading guilty because he was guilty. Basically, you know, what happened here was that the defendant put all his eggs in the private lawyer basket. When that fell through, he made a strategic choice, that it was better for him at this point to plead guilty. Did the record show that he had the money to pay the private lawyer? The record indicates that Ellison would likely have been retained if he could have gotten a continuance. So it does appear that the family at least had represented to him that they had the money to retain him. The issue was, you know, he was in trial on July 2nd, and he could not appear that day. There's evidence that they'd raised $10,000. Evidence of what? That they'd raised $10,000. For a retainer. I'd like to also point out some of the case law from the Supreme Court regarding breakdown and what constitutes a breakdown in communication. And this is not the sort of irreconcilable conflict that between counsel and a client that constitutes denial of counsel. Instead, this is a client refusing to cooperate with his appointed counsel. And this is covered by the Supreme Court holding in Morris v. Slaffy. And the Supreme Court and this Court have made clear that the defendant may not refuse to cooperate with his counsel and thereby effectively manufacture an ineffective assistance for counsel claim. And in Morris v. Slaffy, it was very similar circumstances. The first public defender who was assigned to represent the defendant was hospitalized. A second public defender was assigned the week before trial. The judge would not continue the trial, and the defendant refused to cooperate with the second public defender. He claimed that he had not had enough time to prepare the case. And the client insisted that, in fact, the first public defender was his counsel. The Supreme Court held under those circumstances there was no Sixth Amendment violation, noting, as Judge Reel did here, that a criminal trial is not a game. And the defendant does have an obligation to cooperate with his appointed counsel when that appointed counsel is made available to him. The facts here are strikingly similar. The defendant simply wanted a different lawyer. Can I ask you something? This is toward the end of the hearing on remand after the testimony has come forward. I'm on page 71 in the transcript. I'm on its excerpt. I don't know what that excerpt is. It's whatever that transcript is. Is it W? But it's page 71. This is the Court. The Court says, Mr. Edwards was prepared. He filed motions on behalf of Mr. Bliss, many motions on behalf of Mr. Bliss. He was prepared. Is that true? No, Your Honor. That's a mistake. So the district judge is making a mistake in saying, number one, that he's prepared, and number one, that he'd filed many motions. Had he filed any motions? He did not file motions in the case. And he was not prepared. So the district court is wrong on both counts. Well, what the district court later said about his preparation was that he prepared the case to the best of his ability under the circumstances. And I think he specifically said to the – to say that he was unprepared on the day of trial does not mean that he did not prepare the case to the best of his ability under the circumstances. He did not prepare those findings. The written findings, the government prepared at the court's request. The government prepared. They did. And this is not the government prepared. This is the judge saying in open court, without the protection of a government's prepared findings. This is what the judge says. Mr. Edwards was prepared. He filed many motions. But that's not true, is it? No. Certainly the point about the filing many motions was a factual error on his part. He did do other things. Edwards did prepare an opening statement and cross-examination, cross-examination of war deer questions during instructions. But he did not – he did not file motions. On page 77 of that transcript is the court's oral findings, 76 to 77. And in particular on page 77, the court elaborated the fact that he was not ready for trial on the day of trial doesn't mean he wasn't preparing for trial and didn't do the best that he could and that he didn't do a competent job in doing what he could with the evidence that he had. And if Mr. Bliss had been in any way helpful to him, he would have done that. So I think that's really the elaboration, which did come from the district court, not from the government, as to how – what his take was on the state of the preparation. Coming back to Morris v. Slaffy and what was happening here, essentially what was happening here was that Mr. Bliss was not ready for trial on the day of trial. He was not ready for trial on the day of trial because the defendant would not cooperate with his counsel. His counsel could not adequately prepare his case for trial. And the defendant does not get to do that under the case law. Kennedy. Should there have been a separate lawyer appointed for Mr. Bliss at the very end there where the question is, should he be forced to go to trial? Mr. Bliss is saying, my lawyer hasn't prepared. But Mr. Edwards, in his testimony at the remand, says, well, you know, I never did get a chance to tell Judge Real at that point that I wasn't prepared. He says, I would have told him, but then my client pled. Now, it sounds to me as though I've got a clear conflict of interest between Mr. Edwards and his client at that point because somebody who's truly representing Mr. Bliss would have said, Your Honor, I am not prepared. But Mr. Edwards never said that. And if he'd had a lawyer representing him, Mr. Bliss would have asked Edwards, okay, are you prepared? Edwards would have been forced to say no. Edwards said nothing. And that's the final issue, was there a conflict of interest? Yeah. And so it sounds to me as though there was. Whether it's serious enough to merit in all kinds of things, I don't know, but it sounds as though there's a conflict. Mr. Bliss is not being – the truth that would help him would have been for Mr. Edwards to say forthrightly to the Court, I am not prepared to go to trial. And Mr. Edwards never said that. He didn't say that, although the full truth that Mr. Edwards would have said is what he has said now, which is that he wasn't prepared to go to trial because Mr. Bliss wouldn't cooperate with him. And that does not establish a Sixth Amendment violation. The defendant has to show a conflict of interest that resulted in an adverse effect on counsel's performance. And here the effect on counsel's performance was that if there was any effect, even if there was a conflict of interest – Well, the adverse effect obviously was that he kept his mouth shut. And he did not provide to the Court information that was favorable to Mr. Bliss. He was not as forthcoming as he could have been, as he has been now. No, he's not been very forthcoming now either. There's a lot of things he does not recall, including whether he had a crime file. Well, there are things he doesn't recall many years after the fact, but he has been And what he has said about that is that his client, you know, would not discuss the facts of the case with him. And I think, you know, had he said that now, I don't think that actually would have helped his client's cause, because what it establishes is a Morris v. Slaffy situation where the defendant has simply refused to cooperate because he wants a different lawyer. That does not establish a Sixth Amendment violation. It does not establish his right to have the continuance and get substituted. Did the other lawyer notify the court that as soon as he got paid, he was prepared to take over? He testified that he called the court clerk and informed them that he would likely be retained, but that he would require a continuance. He could not come into the case without a continuance. He did not come into court to say that, but he testified that he called the court clerk to say that. To return to the conflict of interest issue, this is not     clerk. The court clerk may have a record to show that he made that phone call. I don't believe that he did, Your Honor. No, he testified to it. But he testified to that at the remand hearing.  And nobody contradicted? No. No. Only the court cross-examined him on that in a sense in saying that he did not come into court to say that, but he did not. There's nothing to make of that. But, of course, he never said he did come into court. He just said he made the phone call. Yeah. Returning briefly to the conflict of interest issue, this is not the sort of case that gives rise to a conflict of interest. In the cases where a conflict of interest has been found, it's not simply an expression of dissatisfaction with the lawyer or a desire for a different lawyer that gives rise to the conflict. It's something more than that. It's something where, you know, a lawyer is accused of affirmative misconduct, something where they're going to face serious consequences if they contradict or if they don't contradict their client. Here, I mean, mostly it's sort of an issue of personal pride as to how well he prepared the case. And under those circumstances, the case law has said, and White and Morey out of the Second Circuit, more in this circuit, have indicated that, no, a separate counsel is not required under those circumstances. These kinds of allegations are common, and the court is required to inquire into them. And in this case, Edwards himself justified that there was no conflict that prevented him from effectively representing the defendant after he had made those allegations, either the change of plea or the sentencing hearing. There was no sort of bitterness.  And the allegations themselves were simply not of the sort that would give rise to a conflict of interest. Well, just is it correct that at no time did Mr. Edwards or the defendant ask for continuance? At no time did either Mr. Edwards or the defendant request a continuance? Yeah. I mean, did Edwards ever ask for continuance? Edwards did not ask for continuance, I don't believe. Mr. Bliss did bring up in the week before the trial that he had not had time, that he brought up the whole issue, that he wanted to retain this other lawyer and there hasn't been time and, you know, we'd like more time. And Judge Real did deny that, and he said, no, he promised that. So in effect, there was a motion for continuance about a week before the trial? In the week before, I believe it was about six days before. When you say in effect, what do you mean? In effect, a motion for continuance, I mean, it wasn't a formal motion for continuance, but the defendant did raise the issue that he was trying to raise, you know, trying to retain counsel. Actually, on the 26th, he said he did not have the money for that, and he would like time to weigh the plea offer. The court advised him that, you know, they would be going to trial on July 2nd, but again did advise him that no one was going to force him to plead guilty. At that point, they put the matter over to the next day for him to consider. Well, where did he ask for continuance? Did he, in effect, say, well, I want this other lawyer, there's not enough time for that lawyer to prepare, and I'd like that lawyer to handle my case, and we need more time? Your Honor, I don't think that he actually did directly say that. On the 27th, he came back and, again, he asked for another attorney on the 27th. He said that Edwards had not talked to him about the case yet on the 27th when he first said that, and then he says there's just nothing to do but plead guilty. He did mention that Edwards had told him it was too late to file anything. So, really, he was actually much more focused on getting the other lawyer, but he does make references to it being too late. And then at the guilty plea on July 2nd, he did mention that his family had been trying to retain Mr. Ellison and that he was on trial that should close this week, but since he was unable to get a continuance, get this matter continued, then he will plead guilty. So he made references. You know, you're kind of mumbling a little bit on this. I'm sorry. I'm reading my notes as I'm talking. But, essentially, I wouldn't say that Mr. Bliss ever directly asked for a continuance, but he did make – he essentially put out to the Court that he was hoping to retain another lawyer. I think it was made known to the Court that that lawyer was not ready to go on July 2nd. But he's formally represented during this time, if not actually, but formally represented by Mr. Edwards. Yes. So he's not going to make any motions. He's got a lawyer to make motions. And the lawyer makes no motion for a continuance. That's true. Although, since the focus of the defendant's complaint was that he wanted a different lawyer, once it became an issue of wanting a different lawyer, then Mr. Edwards said, you know, he would not take any position on that, and the Court did call upon the defendant, as is typically the case, to explain why he wanted a different lawyer. I think that the focus is more on substitution than on the continuance. Well, yeah. But at that point, Mr. Edwards doesn't say, and by the way, Your Honor, I'm not prepared. He did not. No. He did not. On the 27th, no, he did not say that. Or on the 2nd. He never says that. Or on the 2nd. I don't have the probation report here. What was the criminal history of this defendant? He has a very long criminal history, and he's a career offender. He had, I think, 19 criminal histories. And can you describe some of those? I haven't reviewed that recently, but he had prior, I believe, at least one prior drug-dealing conviction. He must have had either two. He has to have had two crimes that were either drug offenses or a violent felony to qualify as a career offender. It looked to me as it was almost all penny-ante drug-type stuff. I think that's basically correct. I think he had a very large number of small offenses that ended up being a very long time. Yeah. He's not a repeated act of murder. He's a repeated drug offender. That's his problem. That's basically correct. Had he spent any long periods of time in prison? Had he spent long periods of time in prison before? Any of those? You know, I don't know for sure. Given the number of them, I don't think he could have spent very long on any of them because there were a very large number of them and he was not that old when he appeared here. Yeah. If the Court has no further questions. How old was he at that time? Mr. Cannon might know better than I. I believe he was in his 30s at the time of this case. If the Court has no further questions, we'll submit. Thank you, Your Honor. Thank you. I just wanted to respond very briefly. Mr. Bliss was 38 at the time of his arrest. He's slightly over 50 today. When you were talking about Mr. Edwards' obligations to prepare, he did have obligations to prepare and investigate. And those obligations included telling the Court if it was true that Mr. Bliss wouldn't talk to him. And the reason I'm so strong upon the if it was true, when you look at his crime file, there aren't any entries in his crime file that Bliss refused to talk to him. There isn't any contemporaneous information, really, that Bliss refused to talk to him. And he claims that he tried to visit him at least 10 times. There's no record of any of those visits. And the NBC visiting records have been destroyed, so they're simply not available. But when you look at the crime file, when you look at the letters, it doesn't seem that there is a huge failure. There was a huge failure to communicate. But if there was, it was his obligation to bring that failure to communicate to the attention to the Court. And there was – it's my recollection of the testimony at the hearing on the remand that when Mr. Allison testified about that he believed that he had been retained, that he had called the clerk, I think that Judge Rial actually had a recollection of that. But the transcript speaks for itself on that. And when you look at the transcript of the plea, Mr. Bliss says, therefore, since I was unable to get this matter continued to allow Mr. Allison to appear for me in court, I respectfully submit and plead guilty to the charges against me. So it's very clear that he wanted to get the matter continued. He wanted to get another lawyer. He wanted competent, effective assistance, and he didn't get it. Thank you very much. All right. The matter stands submitted. I'm going to take a ten-minute recess.
judges: Pregerson, Cowen, W. Fletcher